# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51897-0-II |
| Respondent, | |
| v. | |
| SOPHEAP CHITH, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Sopheap Chith appeals his sentences following his second resentencing. He argues that (1) the sentencing court erred because it failed to recognize that it had the discretion to run his firearm sentencing enhancements concurrently under *State v. McFarland*[1] and *In re Personal Restraint of Mulholland*,[2] (2) defense counsel's failure to argue that *McFarland* allowed the sentencing court to run the firearm sentencing enhancements concurrently violated his right to effective assistance of counsel, and (3) he was denied his right to be present at two post-resentencing hearings during which the sentencing court amended his judgment and sentence to reflect the correct length of total confinement.  In his statement of additional grounds for review[3] (SAG), Chith contends that the trial court erred when it failed to properly instruct the jury on the

---

[1] 189 Wn.2d 47, 399 P.3d 1106 (2017).

[2] 161 Wn.2d 322, 166 P.3d 677 (2007).

[3] RAP 10.10.

firearm sentencing enhancements at trial and that the firearm sentencing enhancements violate the

prohibition against double jeopardy with respect to three of his convictions because the use of a

firearm was an element of those offenses. These issues either have no merit or are not properly

before us because they relate to Chith's convictions rather than his resentencing. Accordingly, we

affirm Chith's sentences.

FACTS

I. BACKGROUND FACTS

The background facts for this case are set out in Chith's first appeal:

> On February 5, 2013, Mr. Chith stole a silver Honda Civic from the parking lot of a Puyallup apartment complex. Mr. Chith and his girlfriend, Tiffany LaPlante, drove the car to an apartment complex in Spanaway, where the pair joined Sothea Chum and Nicole Shoemaker; they began removing the Civic's tires before Mr. Chith left, fearing capture. People noticed Mr. Chith on the way to Spanaway. Gabriel Colbern sat at a red light at a busy intersection, waiting to turn left, when he saw Mr. Chith across the intersection. Mr. Chith stood outside the Civic, which was stopped at a red light. He appeared to be yelling at the person inside the car. When the light changed, Mr. Chith got back in his car and turned right, directly in front of Mr. Colbern's car. Mr. Colbern noted Mr. Chith was gesturing angrily at his passenger. Ms. LaPlante later told officers Mr. Chith was upset with her, got out of the car, returned, and head-butted her.
>    Mr. Colbern followed Mr. Chith, noting he drove erratically, weaving and fishtailing in and out of lanes. Mr. Colbern saw Mr. Chith fire two shots from the car, shattering the driver's side window, prompting Mr. Colbern to call the police. Mr. Colbern continued to follow Mr. Chith until he stopped in a center turn lane near a junior high school. Mr. Chith tried to wave Mr. Colbern past him, but Mr. Colbern stayed where he was. Mr. Chith then fired two or three shots at or near Mr. Colbern in an attempt to scare Mr. Colbern. Mr. Chith resumed driving, firing two more shots "just toward the neighborhood that was there." Report of Proceedings at 293-94. Mr. Chith drove on, running a red light. A school bus full of children hit Mr. Chith's car, loosening the rear bumper. Mr. Chith still continued to drive, however Mr. Colbern lost sight of the car. Mr. Colbern remained on the phone with the police during this time.
>    Anna Monroe saw Mr. Chith near a busy intersection as she drove home from work. She drove behind Mr. Chith, who was driving aggressively. She saw Mr. Chith extend his arm out the driver's window and fire two shots into the air. Ms. Monroe lost sight of Mr. Chith when his car turned left.

The State charged multiple crimes. A jury found Mr. Chith guilty of the following counts: (I) second degree assault with a firearm enhancement; (II) drive-by shooting; (III) unlawful possession of a stolen vehicle with a firearm enhancement; (IV) second degree unlawful possession of a firearm; (V) reckless driving; (VI) hit and run; (VII) third degree driving with a suspended license; (VIII) violation of a court order with a firearm enhancement; (IX) first degree taking of a motor vehicle without permission with a firearm enhancement; and (X) witness intimidation with a firearm enhancement. The trial court dismissed count III, ruling it merged with count IX. The court sentenced Mr. Chith to concurrent standard range sentences on the felonies plus four firearm enhancements for a total sentence of 228 months. Without findings, the court ordered a substance abuse evaluation and treatment as a community custody condition. Mr. Chith appealed.

*State v. Chith*, No. 33002-8-III, slip op. at 2-3 (Wash. Ct. App. July 9, 2015) (*Chith* I) (unpublished), http://www.courts.wa.gov/opinions/pdf/330028.unp.pdf.

## II. FIRST AND SECOND APPEAL AND FIRST RESENTENCING

In his first appeal, Chith raised several issues related to his convictions and argued that the trial court erred when it imposed substance abuse treatment as a community custody condition. *Id.* at 1. In an unpublished opinion, Division Three of this court reversed the witness intimidation conviction (count X) for insufficient evidence and "remand[ed] for the trial court to resentence on the community custody condition." *Id.* at 1-2. Chith was resentenced on April 15, 2016.

Chith appealed from the April 15, 2016 resentencing. *State v. Chith*, No. 48913-9-II, slip op. at 1 (Wash. Ct. App. Sep. 26, 2017) (*Chith* II) (unpublished), http://www.courts.wa.gov/opinions/pdf/D20%2048913-9-II%20Opinion.pdf. In his second appeal, Chith argued that

(1) the sentences on four of his convictions exceed the statutory maximums for those offenses, (2) the trial court should have dismissed the possession of a stolen vehicle charge with prejudice rather than without prejudice after finding that double jeopardy barred the court from sentencing him on both his possession of a stolen vehicle and his first degree taking a motor vehicle without permission convictions, and (3) his amended judgment and sentence contain[ed] various scrivener's errors.

3

*Id.* at 1.

On September 26, 2017, in an unpublished opinion, we reversed the sentences on the second degree assault conviction with a firearm sentencing enhancement (count I), the drive-by shooting conviction (count II), the violation of a court order conviction with a firearm sentencing enhancement (count VIII), and the first degree taking of a motor vehicle without permission conviction with a firearm sentencing enhancement (count IX). *Id.* at 1. We remanded the matter for the trial court to resentence Chith on those counts, "to vacate the possession of a stolen vehicle conviction," and "to correct any remaining scrivener's errors in the judgment and sentence." *Id.* at 2.

### III.  SECOND RESENTENCING, THIRD APPEAL, AND SUBSEQUENT ORDERS

The second resentencing hearing was set for January 12, 2018. At this hearing, the sentencing court continued the resentencing until February 9 to allow the parties to research and present the court with briefing regarding whether *McFarland* and *Mulholland* applied to Chith's firearm sentencing enhancements.

At the February 9 resentencing hearing, the parties presented the sentencing court with an agreed order correcting the judgment and sentence but reserved the discussion of whether *McFarland* and *Mulholland* applied to Chith's firearm sentencing enhancements because Chith disagreed with defense counsel's conclusion that those cases did not apply. Defense counsel advised the court that he had not submitted briefing on the matter because he had an obligation not to file a frivolous motion but that Chith disagreed with his assessment of the cases.

After discussing the other errors in the judgment and sentence, the sentencing court heard from Chith regarding whether *McFarland* and *Mulholland* applied to his case. Chith argued that

under *McFarland*, the sentencing court should consider imposing "an exceptional sentence downward" and that the court had "the discretion to" run his firearm sentencing enhancements concurrently.[4] 2 Verbatim Report of Proceedings (VRP) at 24. After hearing from Chith, the sentencing court announced that "[a]ll the firearms [enhancements] are to run consecutively as per statute." *Id.* at 26.

The sentencing court's February 9, 2018 order corrected a variety of scrivener's errors, dismissed without prejudice the conviction for possession of a stolen vehicle on double jeopardy grounds, and adjusted several of the remaining sentences to ensure that they were within the statutory maximum for each offense. The sentencing court did not amend the portion of the April 15, 2016 judgment and sentence that ran the firearm sentencing enhancements on counts I, VIII, and IX consecutively to each other. Despite amending the terms of confinement on several of the charges, the sentencing court did not amend total number of months of total confinement to reflect the amended sentences. On February 9, Chith appealed the February 9, 2018 order.

On February 14, the sentencing court entered a motion and order correcting the February 9 order and the April 15, 2016 judgment and sentence. The February 14 order amended the judgment and sentence to show that the total number of months of total confinement was 202 months. Chith asserts that he was not present at the February 14 hearing, and the State does not challenge this assertion.

On September 12, the sentencing court entered yet another motion and order correcting the April 15, 2016 judgment and sentence. The September 12, 2018 order corrected the judgment and

---

[4] Chith did not specify whether he wanted the sentencing court to run the enhancements concurrent to each other or to the base sentences.

sentence again; this time it showed the total months of total confinement was 204 months. Chith asserts that he was not present at the September 12 hearing, and the State does not challenge that assertion.

## DISCUSSION

### I. DIRECT APPEAL

Chith argues that (1) the sentencing court erred by failing to recognize that it had the discretion to run his firearm sentencing enhancements concurrently under *McFarland* and *Mulholland*, (2) defense counsel's failure to argue that *McFarland* and *Mulholland* applied to his firearm sentencing enhancements deprived him of his right to effective assistance of counsel, and (3) he was denied his right to be present at the February 14, 2018 and September 12, 2018 hearings. These arguments fail.

### A. SENTENCING COURT'S ABILITY TO ORDER CONCURRENT SENTENCING ENHANCEMENTS

Chith first argues that we should remand this matter for resentencing because the sentencing court failed to recognize that it had the discretion to impose concurrent firearm sentencing enhancements under *McFarland* and *Mulholland*. We disagree.

RCW 9.94A.533(3)[5] governs adjustments to standard sentences relating to firearm enhancements. It provides,

> The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm

---

[5] The legislature has amended RCW 9.94A.533 numerous times since the date of the offenses at issue in this case. *See* LAWS OF 2018, ch. 7 § 8; LAWS OF 2016, ch. 203 § 7; LAWS OF 2015, ch. 134 § 2; LAWS OF 2013, ch. 270 § 2. Because none of these amendments changed the portions of RCW 9.94A.533 that are relevant to this appeal, we cite to the current version of the statute.

enhancements based on the classification of the completed felony crime. If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement.

RCW 9.94A.533(3).

RCW 9.94A.533(3)(e) further provides,

Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

In *State v. Brown*, our Supreme Court addressed "whether a sentencing court could impose an exceptional sentence downward below the time specified under [former] RCW 9.94A.310(4) [1996] for a deadly weapon enhancement." 139 Wn.2d 20, 22, 983 P.2d 608 (1999), *overruled in part on other grounds by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). Former RCW 9.94A.310(4)(e) provided,

Notwithstanding any other provision of law, any and all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall not run concurrently with any other sentencing provisions.

Former RCW 9.94A.310(4)(e) was subsequently recodified as former RCW 9.94A.510(4)(e) (2002) and is currently codified as RCW 9.94A.533(3)(e). LAWS OF 2001, ch. 10 § 6; LAWS OF 2002, ch. 290 § 10.

The *Brown* court held that the "absolute language" of the statute deprived the sentencing court of discretion to impose an exceptional sentence regarding such enhancements. 139 Wn.2d at 29. The court reasoned as follows:

While Brown's arguments foster preservation of judicial discretion in sentencing, [former] RCW 9.94A.310(4)(e) clearly provides that an offender's sentence cannot be reduced below the times specified in [former] RCW 9.94A.310(4)(b). If [former] RCW 9.94A.310(4)(e) is to have any substance, it must mean that courts

may not deviate from the term of confinement required by the deadly weapon enhancement.

*Id*.

Although our legislature has amended the enhancement statutes several times, it has not amended the relevant statutory language since *Brown* was decided 20 years ago. "'[T]his court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.'" *State v. Otton*, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

Relying on *McFarland* and *Mulholland*, Chith argues that the sentencing court has discretion to depart from mandatory consecutive firearm enhancement sentences despite the statutory language requiring consecutive sentences. This argument is not persuasive.

In *Mulholland*, our Supreme Court held that the plain language of RCW 9.94A.535 and .589 authorizes concurrent exceptional sentences to be imposed for multiple serious violent offenses when the court identifies substantial and compelling reasons to do so, even though RCW 9.94A.589(1)(b) states that sentences for such crimes must be consecutive. 161 Wn.2d at 329-30. In *McFarland*, our Supreme Court similarly held that RCW 9.94A.535 and .589(1)(c) permit the sentencing court to impose exceptional concurrent sentences for firearms-related convictions. 189 Wn.2d at 54-55.

But neither *Mulholland* nor *McFarland* addresses firearm sentencing enhancements and nothing in either of these cases overrules or undermines *Brown*. In fact, in *McFarland*, the court expressly distinguished firearm sentencing *enhancements* from sentences for *firearm-related convictions*, noting that the primary purpose of RCW 9.94A.533 was to ensure that *enhancements*

8

were served consecutively. *McFarland*, 189 Wn.2d at 55 (citing *State v. Conover*, 183 Wn.2d 706, 714, 355 P.3d 1093 (2015)). The fact *Mulholland* or *McFarland* do not undermine *Brown* and *McFarland* distinguishes sentencing enhancements from firearm-related convictions shows that *Mulholland* and *McFarland* do not apply to firearm sentencing enhancements.

Thus, the sentencing court did not err when it refused to impose concurrent firearm enhancement sentences. Accordingly, this argument fails.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Chith also argues that he was deprived of effective assistance of counsel because defense counsel failed to argue that *McFarland* gave the sentencing court discretion to impose concurrent firearm enhancements. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). An appellant claiming ineffective assistance of counsel bears the burden of establishing that (1) counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Defense counsel's representation is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688).

Chith cannot show either deficient performance or prejudice because, as discussed above, the argument that the sentencing court had discretion to run the firearm sentencing enhancements concurrently would not likely have succeeded. *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518

(2010). Additionally, Chith cannot establish prejudice because the sentencing court allowed him to present argument on this issue and Chith does not show that counsel's argument would have been any more effective. Accordingly, Chith's ineffective assistance of counsel argument fails.

C. RIGHT TO BE PRESENT

Chith next argues that he was denied his constitutional right to be present at all critical stages of the proceedings because he was not present at the February 14, 2018 and September 12, 2018 hearings. We disagree.

As a preliminary matter, Chith has not filed notices of appeal from the February 14 or September 12, 2018 orders, nor has he attempted to amend his February 9, 2018 notice of appeal to include these orders. But the State addresses these orders in its response and does not argue this issue is outside the scope of the notice of appeal. Therefore, in order to serve the ends of justice pursuant to RAP 1.2, we briefly address Chith's argument that his right to be present was violated with respect to these orders.

We review whether an appellant's constitutional right to be present was violated de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

> A defendant has a constitutional right to be present at sentencing, including resentencing. *State v. Rupe*, 108 Wn.2d 734, 743, 743 P.2d 210 (1987). However, when a hearing on remand involves only a ministerial correction and no exercise of discretion, the defendant has no constitutional right to be present. *See State v. Davenport*, 140 Wn. App. 925, 931-32, 167 P.3d 1221 (2007).

*State v. Ramos*, 171 Wn.2d 46, 48, 246 P.3d 811 (2011).

Here, the February 14, 2018 and September 12, 2018 orders did not alter the sentences in any way, they merely corrected a mathematical error, which involved no exercise of discretion

whatsoever. Accordingly, Chith had no constitutional right to be present at either proceeding and this argument fails.

## II. SAG

In his SAG, Chith contends that the trial court erred when it failed to properly instruct the jury on the firearm sentencing enhancements. Because this is an appeal from the February 9, 2018 resentencing and the resentencing court exercised its independent judgment only in relation to the resentencing, we cannot address this issue. *State v. Gregory*, 192 Wn.2d 1, 31, 427 P.3d 621 (2018) ("An issue that could have been appealed in an earlier proceeding is reviewable under RAP 2.5(c)(1) in a later appeal following remand of the case *only* if the trial court, on remand and in the exercise of its own independent judgment, considered and ruled again on that issue.").

Chith also asserts that under *Apprendi v. New Jersey*,[6] *Blakely v. Washington*,[7] and *Ring v. Arizona*[8] the imposition of the firearm sentencing enhancements violated the prohibition against double jeopardy with respect to the second degree assault (count I), violation of a court order (count VIII), and first degree taking a motor vehicle without permission (count IX) convictions, because the use of the firearm was also an element of these offenses. Our Supreme Court expressly rejected this argument in *State v. Kelley*, 168 Wn.2d 72, 84, 226 P.3d 773 (2010). Accordingly, this claim fails.

---

[6] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[7] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[8] 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

No. 51897-0-II

We affirm Chith's sentences.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

GLASGOW, J.