IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,          )
                              )          No.  37595-1-III
            Respondent,       )
                              )
      v.                      )
                              )
EDWARD LEON NELSON,           )          UNPUBLISHED OPINION
                              )
            Appellant.        )

STAAB, J. — At a hearing to correct his judgment and sentence, Edward Nelson

requested to represent himself.  The trial court granted the request without conducting a

colloquy to determine if Nelson understood the risks of self-representation.  Despite the

lack of colloquy, we hold that the record sufficiently demonstrated that Nelson was aware

of the risks of proceeding without an attorney and affirm the trial court's order.

BACKGROUND

Since his conviction in 2016, Nelson has raised several challenges to his judgment

and sentence.  Nelson was originally convicted of attempted first degree robbery and

attempting to elude a police vehicle.  He was sentenced to life without parole as a

persistent offender under Washington's "three strikes" law.  His convictions and sentence

were affirmed on direct appeal. *State v. Nelson*, No. 34032-5-III (Wash. Ct. App. May 2,

2017) (unpublished), http://courts.wa.gov/opinions/pdf/340325_ord.pdf.

In 2019, Nelson filed a pro se motion to correct his sentence under CrR 7.8,

arguing that the sentencing court miscalculated his offender score. Specifically, he

argued that two of his prior convictions should have been counted as the same criminal

conduct. When the trial court refused to hear Nelson's motion, he filed a petition for writ

of mandamus to the Washington Supreme Court. The Supreme Court granted Nelson's

petition, and ordered the superior court to act on Nelson's motion.

At his request, counsel was appointed to represent Nelson. However, at the

subsequent hearing in superior court, defense counsel advised the court that Nelson

wanted to proceed pro se "with the assistance of counsel." Report of Proceedings (RP) at

11-13. Counsel explained that he informed Nelson "there's no such animal, that it's

either I represent him or he represents himself." RP at 12. After a recess, the following

colloquy took place:

> THE COURT: All right. Mr. Nelson, do you want to represent yourself
> (inaudible) for these proceedings this morning or do you want to utilize
> [defense counsel], who is appearing on behalf of you through the
> Department of Assigned Counsel.
>
> DEFENDANT: I'd like to proceed pro se, sir.
>
> THE COURT: Very good. All right.

RP at 13. No further discussion about Nelson's pro se status occurred.

The prosecutor submitted an order amending Nelson's 2016 judgment and sentence. The order acknowledged that two of Nelson's prior convictions should count as the same criminal conduct. The order changed his offender score on the 2016 attempting to elude conviction from 5 to 4, and adjusted his standard range accordingly. Finally, the order amended his sentence on the eluding charge from 12 months to 8 months. Nelson's sentence to life without the possibility of parole as a persistent offender was not affected by the order.

Nelson objected to the order and demanded a full resentencing hearing. He cited case law that the court was required to conduct a comparability analysis before imposing a persistent offender sentence. He demanded that the State produce certified copies of the judgments supporting his prior convictions. He also argued that under *State v. Hughes*,[1] aggravating factors used to support an exceptional sentence must be found by a jury. Since the court lacked authority to impanel such a jury, Nelson argued that the court must impose a standard range sentence.

The superior court rejected Nelson's objections, construing the Supreme Court's order as correcting a judgment, not authorizing resentencing. Nelson continued to argue against this interpretation, citing cases from the United States Supreme Court.

---

[1] *State v. Hughes*, 166 Wn.2d 675, 688, 212 P.3d 558 (2009).

Nelson appealed the superior court's order amending his sentence. At his request, we appointed counsel to represent Nelson on appeal. After his attorney filed an opening brief, Nelson moved this court to strike the brief and proceed pro se. A panel of this court denied his motion.

## ANALYSIS

The only issue raised in this appeal is whether Nelson validly waived counsel at a hearing to correct his sentence. A criminal defendant is constitutionally entitled to be represented by counsel at all critical stages of the proceedings. *State v. Rupe*, 108 Wn.2d 734, 741, 743 P.2d 210 (1987); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "This right extends to resentencing" and, generally, "whenever a court considers any matter in connection with a defendant's sentence." *Rupe*, 108 Wn.2d at 741 (citing *Johnson v. United States*, 619 F.2d 366 (5th Cir. 1980)); (citing 3C WRIGHT, FEDERAL PRACTICE § 525, at 81 (1982)). The State concedes that Nelson's hearing to correct his sentence was a critical stage of the proceedings. Br. of Resp't at 8; s*ee also State v. Davenport*, 140 Wn. App. 925, 167 P.3d 1221 (2007).

A criminal defendant also has a constitutional right to self-representation. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). The rights are mutually exclusive in that "a request for pro se status is a waiver of the constitutional right to counsel." *Id*. at 504. Only if counsel is properly waived does the accused have the right to self-representation. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 209, 691 P.2d 957 (1984). A

4

waiver of counsel must be unequivocal as well as knowing and intelligent. *State v. Silva*, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). Whether the defendant's waiver is valid lies within the sound discretion of the trial court, however the court should start with a presumption of representation. *Id*.

Generally, a trial court considering a defendant's motion to waive counsel and proceed pro se should ensure that the defendant has minimal knowledge of the risks and disadvantages associated with self-representation. *Acrey*, 103 Wn.2d at 209. The preferred method for protecting the right to counsel is a *Farretta*[2] colloquy on the record discussing "the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case." *Acrey*, 103 Wn.2d at 211.

In this case, the record does not establish that the trial court conducted an adequate colloquy. This is concerning, but not necessarily fatal. If the trial court fails to conduct a colloquy, we may consider whether the record demonstrates the "defendant's actual awareness of the risks of self-representation." *Id*. When a case is in pretrial status, the record must demonstrate that the defendant understood the charges, the maximum possible sentence, the existence of technical rules, and general trial procedure. *Id*. at 211.

---

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Nelson's case was not in pretrial status. Instead, he was before the court on the narrow issue of correcting a judgment that would have no effect on his sentence as a persistent offender. It is clear from the record that Nelson had a firm grasp of the legal issues at hand, and the impact of the court's decision. He cited case law and raised several reasoned and articulate issues relevant to resentencing.

On appeal, the State argues that the record of this appeal and others demonstrates that Nelson has a history of representing himself. We agree with our dissenting colleague that the record does not sufficiently establish Nelson's history of self-representation. Nor can we confirm if Nelson was properly advised on any of these prior occasions. Regardless, the *Farretta* colloquy is not a one-size-fits-all type of warning. Instead, it should be tailored to the unique issues before the court at the time that a waiver of counsel is requested. The risks of self-representation at a post-conviction motion to correct a sentence are different than a pre-sentencing hearing.

Counsel on appeal argues that Nelson did not understand that hybrid representation was not an option. This may have been true initially, but the trial court told Nelson on the record that there was no such right, and gave him an opportunity to speak with his attorney before proceeding with his motion. After consulting with his attorney, Nelson did not raise the issue of hybrid representation and asked to proceed pro se.

Counsel on appeal also argues that Nelson did not appear to understand the scope of remand because he argued for a full resentencing. A better characterization of the

record is that Nelson disagreed with the scope of remand; not that he misunderstood it. The dissent points out that some of Nelson's arguments were outrageous and would not have been made by an attorney. And yet, this may be why Nelson wanted to represent himself; so he could make arguments that his attorney would not. The question is not whether Nelson would do a good job of representing himself. Indeed, he who represents himself has a fool for a client. Instead, the question is whether Nelson understood the risks of proceeding without an attorney.

Both Nelson and the dissent argue that Nelson did not understand the risks of self-representation, citing *Silva*, 108 Wn. App. 536. This was not a pre-trial hearing, nor was it a sentencing hearing. It was a motion to correct a judgment and sentence. Neither counsel nor the dissent articulate what risks Nelson faced in this hearing. Instead, counsel acknowledges that the hearing was limited to the narrow issue of correcting the judgment; a correction that would not impact Nelson's persistent offender life sentence.

The record in this case demonstrates that Nelson's legal comprehension of the technical rules was significant and his risks of self-representation were minimal. Consequently, this is one of those rare cases where the record demonstrates that Nelson was well aware of the risks of self-representation despite the lack of an effective colloquy. *See Acrey*, 103 Wn.2d at 211 ("only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self-representation").

No. 37595-1-III
*State v. Nelson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

I CONCUR:

_____
Lawrence-Berrey, J.

No. 37595-1-III

FEARING, J. (dissenting) — The State and this court's majority concede that the United States and the Washington State Constitutions afforded Edward Nelson the right to counsel at an April 2, 2020 resentencing hearing. The Washington Supreme Court had previously ordered the hearing for the purpose of addressing a motion filed in the superior court for correction of Nelson's sentence. The superior court had refused to entertain the motion.

Both the State and the majority further acknowledge that the sentencing court, at the April 2 hearing, failed to sufficiently question Nelson before allowing him to waive his right to counsel. Instead, the court engaged in no colloquy to establish that Nelson knowingly, intelligently, and voluntarily waived this fundamental constitution right. But the State and the majority conclude that circumstances establish that Nelson waived the right anyway. In arguing waiver, the State emphasizes Nelson's having represented himself on other occasions. In finding waiver, the majority stresses that the April 2 sentencing hearing transcript shows that Nelson intelligently represented himself.

1

I disagree with the State and dissent from my colleagues. Contrary to the State's position, the record before this court does not establish that Edward Nelson appeared pro se in other court proceedings. Even if the record established other self-representations, each case or hearing is unique such that the superior court must warn the defendant of the consequences in each discrete case. Contrary to the majority's conclusions, the April 2 hearing transcript does not establish that Edward Nelson represented himself competently at the sentencing hearing. Even if Nelson had adequately represented himself, structural error in denying Nelson his constitutional right to counsel precludes this court from finding waiver.

On January 30, 2020, the Washington Supreme Court signed an order that prompted the April 2 hearing that gives rise to this appeal. The order, directed to the Honorable Michael McCarthy, former Yakima County Superior Court Judge, read, in part:

> The Respondent [Judge McCarthy] is directed to act on the Petitioner's "Motion to Correct Judgment and Sentence 7.89(b)(l) filed on August 26, 2019, in Yakima County Superior Court No. 14-1-01197-6.

Clerk's Papers at 84. Edward Nelson's motion asked the sentencing court to readdress whether two earlier offenses committed in King County should be scored as one point, in his offender score, because the two crimes constituted the same criminal conduct.

Waiver of Counsel

The Sixth and Fourteenth Amendments of the United States Constitution and article I, section 22 of the Washington State Constitution afford a criminal defendant both the right to assistance of counsel and the right to reject that assistance and to represent himself. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Kolocotronis*, 73 Wn.2d 92, 97, 436 P.2d 774 (1968). A waiver of the right to counsel must be knowing, voluntary, and intelligent, as with any waiver of constitutional rights. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). A defendant desiring to proceed pro se must make the request unequivocally. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991).

The court holds the obligation to verify that any waiver of counsel is knowing, intelligent, and voluntary. Thus, a valid waiver requires a thorough inquiry into the defendant's understanding of self-representation. *State v. Chavis*, 31 Wn. App. 784, 789, 644 P.2d 1202 (1982). A mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Chavis*, 31 Wn. App. 784, 789-90 (1982). A judge must investigate as long and as thoroughly as the circumstances demand. *Von Moltke v. Gillies*, 332 U.S. 708, 723-24, 68 S. Ct. 316, 92 L. Ed. 309 (1948). An accused's insistence that he is informed of his right to counsel and

3

desires to waive this right does not end the judge's responsibility. *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

In protecting the right to counsel and assuring that the accused knowingly, intelligently, and voluntarily waived the right, the court should engage in a colloquy on the record with the accused, during which the court should warn the accused of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. *Faretta v. California*, 422 U.S. 806, 835 (1975); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942). The Washington Supreme Court strongly recommends such a colloquy as the most efficient means of limiting appeals. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

Despite the many directions from high courts to engage in a thorough colloquy, in cases where no colloquy exists on the record, a reviewing court will look at any evidence on the record that shows defendant's actual awareness of the risks of self-representation. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211 (1984). Evidence of a defendant's literacy, educational level, common sense, or prior experience with the criminal justice system, however, will not suffice to show awareness of these risks. *City of Bellevue v. Acrey*, 103 Wn.2d at 211. At a minimum, the record must show that the defendant knew of the existence of technical rules relating to the proceeding. *City of Bellevue v. Acrey*, 103 Wn.2d at 211. Rarely will adequate information exist on the record, in the absence

4

No. 37595-1-III
*State v. Nelson* (dissent)


of a colloquy, to show the required awareness of the risks of self-representation. *City of*

*Bellevue v. Acrey*, 103 Wn.2d at 211.

STATE'S POSITION

The State writes on appeal:

> This court is intimately familiar with this case and the original facts
> in the underlying conviction. Again, as this court is well aware, this case
> has generated just under twenty separate cause numbers between the filings
> in this court and in the Washington State Supreme Court. In a significant
> number of those cases Nelson represented himself. The original PRP
> [personal restraint petition] that resulted in the resentencing that is the
> underlying subject of this PRP was filed and completed by Nelson pro se.

Br. of Resp't. at 2. The State then lists twenty appellate cases filed in this court or the

Supreme Court by Edward Nelson. The State does not contend that the superior court

had earlier in this prosecution on appeal authorized Edward Nelson to represent himself.

The State does not identify where, in the record of this appeal or any of the twenty

other cases, a court authorized Edward Nelson to represent himself, let alone where the

court engaged in the colloquy needed before a court concludes that the defendant

voluntarily and intelligently waived his right to counsel. RAP 10.3(a)(5) requires a party

to write a fair statement of the facts and procedure relevant to the issues presented for

review in its brief and to include references to the record for each factual statement. We

decline to consider facts recited in the briefs but not supported by reference to the record.

*Sherry v. Financial Indemnity Co.*, 160 Wn.2d 611, 615 n.1, 160 P.3d 31 (2007). An

appellate court will not search through the record for evidence relevant to a litigant's

5

arguments. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992); *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966).

In addition to failing to identify any instance when a court granted Edward Nelson the prerogative to represent himself, the State fails to show that any of the other cases paralleled the resentencing motion that reaches us on appeal, such that warnings given in another case sufficed for the warnings needed in the pending matter. Evidence of a defendant's prior experience with the criminal justice system does not suffice to show an awareness of these risks. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211 (1984). Colloquy in one case may not suffice as applied to a second case. *State v. Silva*, 108 Wn. App. 536, 540, 31 P.3d 729 (2001).

In *State v. Silva*, 108 Wn. App. 536 (2001), the trial court granted Matthew Silva a request to proceed pro se based on colloquy in another case. The court conducted no new colloquy. Silva profitably and intelligently litigated motions in the prosecution. Nevertheless, on appeal, Silva successfully argued that the court provided him with insufficient information from which he could validly waive his constitutional right to assistance of counsel and proceed pro se in the pending prosecution.

## MAJORITY'S POSITION

The majority writes that this court need only consider whether the record demonstrates the defendant's actual awareness of the risks of self-representation. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211 (1984). The majority then differentiates between

6

waiver during a case's pretrial status and sentencing status. I agree this distinction should be made. At pretrial status, the warnings should include the need to understand and follow trial procedures, including evidentiary rules, and the maximum possible sentence. At sentencing, the warnings should include, among other cautions, the need to understand technical rules followed during a sentencing hearing and the need to review and understand the complicated Sentencing Reform Act of 1981, chapter 9.94A RCW. Edward Nelson's sentencing court gave no warnings whatsoever.

The majority concludes that Edward Nelson understood the legal issues at hand. The transcript of the April 2, 2020 hearing illustrates otherwise. Nelson believed he was present for resentencing. The majority writes that Nelson disagreed with the scope of the remand from the Supreme Court, not that he misunderstood the scope. The record does not support this court's factual finding. Nelson always spoke as if he honestly expected to reopen his sentencing from an earlier year, despite his pending motion likely being limited. Regardless, the law does not afford an exception, to the need to find a knowing, intelligent, and voluntary relinquishment of the right to counsel, based on a retrospective determination that the offender appeared to understand the legal issues involved.

The record establishes that lay attorney Edward Nelson knew some of the law as pertaining to his pending motion and to his sentencing in general. Nevertheless, like most pro se litigants, he could not synthesize the law into cogent arguments. He lacked an ability to persuasively present arguments to a learned judge. To repeat, he thought he

7

was entitled to an entire resentencing. Nelson also damaged his interests by demanding that the sentencing court agree that it was imposing an invalid sentence and by accusing the prosecuting attorney of fraud. Many licensed counsel would not create these missteps.

I note that a panel of this court previously denied Edward Nelson the opportunity to proceed pro se on this appeal. The ruling suggests an inability of Nelson to intelligently represent himself at least under some circumstances.

The majority emphasizes the narrow issue before the superior court on April 2, 2020, that issue being a correction of the offender score. The majority further implies that the narrow issue only involved a ministerial act of correcting a judgment such that Edward Nelson did not need counsel or any constitutional error was not prejudicial. After all, the State agreed to score the two King County crimes as one offense.

At the time that the sentencing court permitted Edward Nelson to forgo the right to counsel, Nelson did not know that the court would agree to the correction of the score. The record does not even show that Nelson knew the State would concede the correction. To the contrary, Nelson later stated he had not seen the State's proposed order. Counsel could have assisted Nelson by communicating with the prosecuting attorney and facilitating an agreement. Counsel could have also explained to Nelson the limited nature of his motion and the hearing. We also do not know if defense counsel could have formulated an argument that would have permitted other issues to come before the court.

Assuming the majority pins its ruling in part of the lack of prejudice, that pin does not stick. Violation of the right to counsel is a "structural error" not subject to the harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The right to counsel is fundamental in our scheme of justice and failure to make a record from which to determine whether a waiver of counsel was valid constitutes reversible error. *United States v. Ramirez*, 555 F. Supp. 736, 742 (E.D. Cal. 1983).

A court must indulge every reasonable presumption against the waiver of fundamental rights. *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207 (1984). The Spartan majority forgoes any indulgence.

I would reverse and remand for a new hearing on Edward Nelson's motion to correct judgment. At the time of this hearing, Nelson may choose to be represented by counsel, or may waive his right to counsel, but only after the sentencing court delivers warnings and the court determines his waiver is knowing, intelligent, and voluntary.

I recognize that my view will impose additional duties on the superior court, if not the State, in substantiating that Edward Nelson knowingly and intelligently waived his right to counsel. I also understand the frustrating nature of interfacing with pro se defendants. Finally, I acknowledge that a remand for the purpose of the pro se colloquy may lack any practical aftermath. But a full colloquy at a sentencing hearing need last

9

only fifteen minutes, if even that.  Regardless, we protect the constitutional rights of the

offender, particularly the revered right to counsel, irrespective of expediency.  This court

must guard critical constitutional rights regardless of little, if any, consequences.

I respectfully dissent:

_____

Fearing, J.